USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _07/24/2015_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To All Actions*
-------------------------------------------------------------------------------x

14-MD-2543 (JMF)
14-MC-2543 (JMF)

OPINION & ORDER

JESSE M. FURMAN, United States District Judge:

This multi-district litigation ("MDL") relates to highly publicized defects in the ignition switches and related features of certain General Motors-brand vehicles.  Before the Court is a motion filed by General Motors LLC ("New GM") for a protective order enjoining Plaintiffs' counsel in this MDL from using pre-trial discovery materials for any purpose other than litigating this case — including, and most significantly, releasing those materials to the press.  For the reasons that follow, the motion is granted in part and denied in part.  More specifically, the Court rejects New GM's arguments for a broad protective order, but concludes that a more limited protective order addressing specific concerns raised by New GM is warranted.

**BACKGROUND**

The Court presents the following as background to the issues raised by New GM's motion, assuming more general familiarity with the underlying facts and procedural posture of the MDL.  Over one year ago, New GM announced the first of what would be become many recalls of its vehicles based on a defect in their ignition switches, one that "causes the vehicle's ignition switch to move unintentionally from the 'run' position to the 'accessory' or 'off' position, resulting in a loss of power, vehicle speed control, and braking, as well as a failure of the vehicle's airbags to deploy."  (*See* 14-MD-2543 Docket No. 1).  Since then, consumers have filed scores of lawsuits — most of which are now part of this MDL — alleging personal injury,

1

wrongful death, and economic loss claims arising out of the defects and recalls.  As of last month, the parties had conducted or noticed over 200 depositions, including several of current or former New GM employees, and New GM had produced close to ten million pages of documents as part of discovery.  (14-MD-2543 Docket No. 1033, at 2).  Notably, a significant amount of information about the underlying facts is already in the public domain, in no small part due to an internal investigation conducted — at the behest of New GM — by Anton Valukas of Jenner & Block, which resulted in a report (the "Valukas Report") that was later made public (with minimal redactions).  (*See* Pls.' Mem. Law Opp'n General Motors LLC's Mot. Protective Order Regarding Pretrial Discovery Materials (14-MD-2543 Docket No. 1085) ("Pls.' Mem.") 4-5).  *See generally In re Gen. Motors LLC Ignition Switch Litig.*, — F. Supp. 3d —, No. 14-MD-2543 (JMF), 2015 WL 221057, at *1-3 (S.D.N.Y. Jan. 15, 2015).

Shortly after this MDL commenced, the Court entered an order ("Order No. 10") — proposed jointly by New GM, other Defendants, and the three attorneys appointed by this Court to represent all Plaintiffs in the MDL ("Lead Counsel") (*see* Order No. 8 (14-MD-2543 Docket No. 249)) — governing, among other things, confidential materials produced during discovery. (Order No. 10 (14-MD-2543 Docket No. 294)).  Order No. 10, which remains in effect, recognizes that documents filed with the Court in connection with a request for judicial determination are generally subject to the presumption in favor of public access to judicial documents and may not be sealed or redacted absent Court approval.  (*See id.* at 1).  At the same time, the Order allows the parties to attach "blanket confidential designations" to documents produced during discovery "so as to immediately provide bulk production of millions of pages of documents." (*Id.*).  Documents the producing party can designate as "confidential" or "highly confidential" include those containing personal identifying information; those containing

confidential business information, the disclosure of which may result in commercial harm; and

information the producing party otherwise believes can be subject to protection under Rule 26(c)

of the Federal Rules of Civil Procedure.  (*Id.* at 2-3).  The Order provides that any party may

challenge a confidentiality designation by serving a written objection upon the producing party's

counsel, which the producing party must respond to either by agreeing to remove the designation

or stating the reasons for it, with any disputes ultimately to be resolved by the Court.  (*Id.* at 6).

So long as a document remains designated as "confidential" or "highly confidential," however, it

may be shared only with specified individuals, and must be used only in this MDL.  (*Id.* at 7-10).

Significantly, Order No. 10 does not address the use of documents produced during

discovery that are never designated as "confidential" or "highly confidential" (or documents that

were initially designated as such but were de-designated upon a challenge by another party

pursuant to the Order).  Accordingly, New GM contends, Lead Counsel has submitted multiple,

wide-ranging de-designation requests pursuant to the Order so as to selectively release discovery

documents to the press.  (General Motors LLC's Mem. Law Supp. Mot. Protective Order

Regarding Pretrial Discovery Materials (14-MD-2543 Docket No. 1059) ("New GM's Mem.")

3-4).  Further, as the January 11, 2016 start date of the first bellwether trial in this MDL

approaches (*see* Order No. 25 (14-MD-2543 Docket No. 422) ¶ 50), New GM contends that

Lead Counsel has made several inflammatory comments about the conduct of New GM and its

counsel — and has also released the identities, along with tentative deposition dates, of several

non-party deponents, present and former GM executives.  (New GM's Mem. 5-6).  Through

these tactics, New GM argues, Lead Counsel has "turn[ed] pre-trial discovery into a mockery

designed to garner sensational press coverage, rather than preparing for a trial on the merits."

(*Id.* at 1).  It therefore seeks entry of a protective order that greatly expands the reach of Order

No. 10 by specifying that *all* "Information" in this MDL — defined to include all documents, testimony, and other data or information exchanged as part of discovery (Order No. 10 at 2) — "shall be used solely for the purposes of the MDL Litigation and Related Cases and may not be publicly disseminated," except when filed in connection with a request for judicial determination.  (Docket No. 1058, Ex. 1 ("New GM's Proposed Order")).

## DISCUSSION

New GM brings its motion for a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure, which provides that a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by, among other things, limiting the disclosure of documents obtained during discovery, upon a showing of good cause.  Fed. R. Civ. P. 26(c).  "Because discovery is a private process between the parties to an action (even if governed by specific rules and managed by trial judges)," the documents and materials exchanged therein are generally regarded "as outside the judicial function and therefore not presumptively accessible."  *United States v. Smith*, 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013); *see Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) (noting that "pretrial depositions and interrogatories are not public components of a civil trial").   This oft-cited proposition — that documents exchanged between the parties during pretrial discovery are not presumptively accessible to the public — gained even more force in 2000, when Rule 5(d) of the Federal Rules of Civil Procedure was amended to expressly prohibit the filing of certain discovery materials unless they are used in a proceeding or a court orders their filing.  *See* Fed. R. Civ. P. 5(d); *see also id.*, Advisory Comm. Notes 2000 amend. (noting that "there is little reason to continue expending court resources for th[e] purpose" of "stor[ing] filed materials that are not used in an action"); *cf. In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 146 (2d Cir.

1987) (discussing the prior version of Rule 5(d), which "require[d] that all discovery materials must be filed with the district court, unless the court orders otherwise").

Nevertheless, just because the public is not presumed to have access to pretrial discovery materials, it does not follow that parties should be — or are — *barred* from sharing them publicly, particularly in light of Rule 26(c)'s enduring "good cause" requirement.  Instead, it is well established that, "[i]n the absence of . . . a [Rule 26(c)] protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit."  *Schiller v. City of N.Y.*, No. 04-CV-7921 (KMK) (JCF), 2007 WL 136149, at *2 (S.D.N.Y. Jan. 19, 2007) (internal quotation marks omitted).   "'A plain reading of the language of Rule 26(c) demonstrates that the party seeking a protective order has the burden of showing that good cause exists for issuance of that order.  It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection.'"  *Kelly v. City of N.Y.*, No. 01-CV-8906 (AGS) (DF), 2003 WL 548400, at *4 (S.D.N.Y. Feb. 24, 2003) (quoting *Agent Orange*, 821 F.2d at 145-46). "Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury."  *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (internal quotation marks omitted).   Further, such harm "must be significant, not a mere trifle."  *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186-87 (S.D.N.Y. 2014) (internal quotation marks omitted).

In this case, New GM argues that, for two reasons, there is good cause for a "blanket" protective order — namely, one that would bar disclosure of not only documents designated as confidential, which is already provided for in Order No. 10, but *all* materials produced during pretrial discovery in this MDL.  The first is that, through selective and inflammatory statements

and disclosures, Lead Counsel have indicated their intent to "try this case in the media."  (New

GM's Mem. 12).  Accordingly, New GM asserts, "[t]he potential harm to New GM or individual

witnesses is not theoretical, but is instead a deliberate strategy to publicly and selectively

disclose materials damaging to New GM and thus deprive it of a fair trial."  (*Id.*).  The second is

that "[d]epositions and other discovery materials produced here are interwoven with sensitive or

potentially embarrassing information about third parties, as well as otherwise privileged

information provided under special protections and orders" — information that, New GM

alleges, Lead Counsel has indicated a willingness and desire to selectively release to the public.

(*Id*. at 15-19).  Notably, New GM appears to concede that these rather generalized assertions of

harm — based primarily on a handful of strongly worded but nonetheless non-specific references

by Lead Counsel to the conduct of New GM and the depositions of its executives — would not

suffice for entry of a protective order in the mine-run of cases.  Instead, it asserts that it has met

its burden of establishing good cause because courts — including at least one in this District —

have found that "'[i]n cases of unusual scope and complexity, . . . broad protection during the

pretrial stages of litigation may be warranted without a highly particularized finding of good

cause.'"  (*Id.* at 10 (quoting *Terrorist Attacks*, 454 F. Supp. 2d at 222)).

As Lead Counsel argues (*see* Pls.' Mem. at 11 n.37), at least some of the cases New GM

cites in support of its argument for good cause involved situations distinguishable from those in

this MDL.  *Terrorist Attacks*, for example, involved "numerous defendants, including sovereign

states, government institutions, public figures, private individuals, companies, charitable

organizations, and others"; accordingly, the Court determined that "[d]efendant-by-defendant

good cause determinations for individual protective orders at this juncture in this case, much less

document-by-document confidentiality determinations where no protective order has issued,

would impose an enormous burden upon the Court and severely hinder its progress toward

resolution of pretrial matters."  454 F. Supp. 2d at 223.  Nevertheless, the Court need not parse

the case law on this score because, even assuming *arguendo* that New GM has met its burden of

showing good cause through its more generalized assertions of harm, that does not end the

matter.  "If the moving party meets its burden of establishing good cause for a protective order,

the court may balance any countervailing interests in determining whether to exercise its

discretion to grant the order."  *DaCosta v. City of Danbury*, 298 F.R.D. 37, 39 (D. Conn. 2014).

"Such countervailing interests might include whether the order will prevent the threatened harm,

whether there are less restrictive means of preventing the threatened harm, the interests of the

party opposing the motion, and the interests of the public."  *Id.*  In this case, the countervailing

interests cut against entry of a protective order of the breadth that New GM requests.

First, the public interest in this case weighs heavily against an order as broad as that

sought by New GM here.  Although, as noted, the public may not have a presumptive right to

discovery materials produced during this litigation, see *Seattle Times*, 467 U.S. at 33, its interest

in access to documents — and certainly non-confidential ones — is properly considered in

determining whether to enter a protective order, particularly a "blanket" protective order.  *See*

*Condit v. Dunne*, 225 F.R.D. 113, 119 (S.D.N.Y. 2004).[1]  Whether or not this MDL involves a

---

[1]     In its reply brief, New GM asserts that *Condit* was decided under the previous version of
Rule 5(d) and therefore, to the extent it relies on that version of the Rule (namely, on its
presumption that all discovery materials would be filed with a court), it is no longer good law.
(General Motors LLC's Reply Br. Supp. Mot. Protective Order Regarding Pretrial Materials (14-
MD-2543 Docket No. 1126) ("New GM's Reply Mem.") 3 n.2).  But Rule 5(d) was so amended
in 2000, whereas the *Condit* opinion was issued in 2004 — and *Condit* does reference, albeit
obliquely, the amendments to the Rule in 2000.  *See Condit*, 225 F.R.D. at 120.  In any event, the
Court does not read *Condit* to suggest that there is a presumption of public access to discovery
materials, but rather that the public's interest in the subject matter of the litigation is an

"'weighty interest in public safety,'" as Lead Counsel asserts (Pls.' Mem. 12 (quoting *In the Matter of Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 428 (9th Cir. 2011))), it has indisputably captured the attention of scores of GM consumers and shareholders, not to mention the attention of the press and public more generally.  That "pre-existing public interest . . . cuts in *favor* of allowing public access to the [discovery materials], not against it." *Laugier v. City of N.Y.*, No. 13-CV-6171 (JMF), 2014 WL 6655283, at \*2 (S.D.N.Y. Nov. 24, 2014); *see also Vazquez v. City of N.Y.*, No. 10-CV-6277 (JMF), 2014 U.S. Dist. LEXIS 61451, at \*3 (S.D.N.Y. May 2, 2014)  (declining to enter a protective order "in view of, among other things, the public interest in the subject matter of this civil rights litigation" and "the extent and nature of the existing media coverage of the case").[2]

Second, there are alternative means of preventing the harm New GM fears.  New GM argues first that Lead Counsel's selective disclosure of discovery materials may irreparably damage its ability to secure a fair and impartial jury in its upcoming bellwether trials, thus

---

appropriate consideration in determining whether to affirmatively *ban* the dissemination of such materials.

[2]     New GM argues that despite acknowledged public interest in this litigation, "[g]overnmental oversight and investigation (including New GM's ongoing reporting under the NHTSA Consent Order and the still unresolved DOJ investigation) tip the scale against disclosure here." (New GM's Reply Mem. 4).  But the cases New GM cites for that proposition involve situations in which disclosure of discovery materials interfered with, or at least directly implicated, an ongoing governmental investigation. (*Id.* ("'[C]ourts have repeatedly recognized that materials, including even judicial documents which are presumptively accessible, can be kept from the public if their dissemination might adversely affect law enforcement interests.'" (quoting *Smith*, 985 F. Supp. 2d at 531)).  While there is an ongoing DOJ investigation into New GM, New GM provides no examples, other than conclusory assertions, of how Lead Counsel's disclosure of discovery materials here would impede or otherwise affect that investigation. Absent more specific information of a threat, the Court declines to afford it any weight. (*See* Order No. 70 (14-MD-2543 Docket No. 1188) at 1-2).

justifying a prohibition on the release of all pretrial discovery materials. The Court, however, has various tools at its disposal to preserve New GM's right to a fair trial, all short of the broad relief New GM seeks. First, and most obvious, courts have frequently recognized that searching *voir dire* of potential jurors can provide an adequate means of ensuring an impartial jury pool, even in the face of potentially damaging releases or press coverage. *See United States v. Graham*, 257 F.3d 143, 154 (2d Cir. 2001) (noting that "alternative remedies" other than barring release of pretrial documents "exist to ensure that the defendants receive a fair trial, [including] a more searching *voir dire*"); *Application of Dow Jones & Co.*, 842 F.2d 603, 611 (2d Cir. 1988) (noting the availability of various means, including "searching voir dire, emphatic jury instructions, and sequestration of jurors" as ways "to mitigate . . . prejudicial publicity"); *see also Condit*, 225 F.R.D. at 118 (finding, based on Second Circuit precedent, that "publicity is unlikely to color incurably jurors' views, even in the most high-profile cases" (citing *In re NBC, Inc.*, 635 F.2d 945, 948 (2d Cir. 1980))).

Additionally, pursuant to both the Federal Rules of Civil Procedure and its inherent authority, the Court has discretion to enter prophylactic orders that will protect parties' right to a fair trial. *See Munoz v. City of N.Y.*, 11-CV-7402 (JMF), 2013 WL 1953180, at *2 (S.D.N.Y. May 10, 2013). Here, while the behavior of Lead Counsel thus far does not warrant a protective order of the breadth New GM seeks, some of Lead Counsel's statements to the press are concerning enough to warrant other protective measures in advance of trial. As part of that discretion, and as this Court has ordered in other cases, *see id.*, the Court hereby adopts Rule 3.6 of the New York State Rules of Professional Conduct, which prohibits extrajudicial statements by counsel "that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an

adjudicative proceeding in the matter," as an order of the Court applicable to all counsel of record.  Accordingly, any future breach of Rule 3.6 may be punished as a violation of this Court's orders under Rule 16(f) of the Federal Rules of Civil Procedure or under the Court's inherent power, and the Court "may impose monetary sanctions, order referral to the [New York] Disciplinary Board . . . or enter such other orders which are just under the circumstances." *Constand v. Cosby*, 229 F.R.D. 472, 478 (E.D. Pa. 2005).  That order, coupled with vigorous *voir dire* and other protective measures immediately before and during trial, should be more than sufficient to protect New GM's right to a fair trial.

New GM also cites the interests of non-parties — including current and former New GM employees already or soon to be deposed in this litigation — in avoiding embarrassment, harassment, and invasions of privacy.  (New GM's Mem. 15-19).  The Court agrees that those interests are weighty enough to justify some restrictions on the dissemination of discovery.  *See, e.g.*, *Kelly*, 2003 WL 548400, at *5 (finding that a court must "make reasonable efforts to guard against disclosure that has the potential to invade [non-parties'] privacy and impair their personal reputations"); *see also Dorsett v. Cnty. of Nassau*, 762 F. Supp. 2d 500, 521 (E.D.N.Y. 2011) (noting that "the privacy interests of third parties carry great weight" in determining whether documents are protected from disclosure (citing *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)), *aff'd sub nom.*, *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156 (2d Cir. 2013). Further, the Court agrees that Order No. 10, in its current form, does not necessarily suffice to protect those interests because, among other things, it places the burden on New GM — whose interests may or may not be aligned with the interests of the relevant third parties (especially former employees) — to respond to de-designation requests, and may lead to selective disclosure of de-designated material in any event.  *See McDonnell v. First Unum Life Ins. Co.*, No. 10-CV-

08140 (RPP), 2012 WL 13933, at *2 (S.D.N.Y. Jan. 4, 2012) (finding that "[r]edaction of personal identifying information does not provide ample protection for the privacy interests of non-parties to the litigation," and entering a protective order with respect to third-party performance evaluations and compensation information).  The privacy interests of a few, however, do not justify the wholesale bar on release of *all* discovery materials that New GM seeks here.  Instead, they justify a more limited protective order restricting the dissemination or disclosure of, for example, certain deposition testimony or information contained in personnel files — information that could be used to embarrass, harass, or violate the privacy interests of third parties to this litigation.  Notably, Lead Counsel does not entirely oppose entry of such a protective order — indicating that they are "open" to discussing modifications to Order No. 10 to protect disclosure of "embarrassing information about non-parties." (Pls.' Mem. at 17).

Accordingly, the parties are directed to meet and confer with an eye towards proposing a narrow protective order, consistent with this Opinion and Order, covering the disclosure of certain deposition testimony and the personnel files of current and former New GM employees — and, if narrowly tailored, the privacy interests of non-parties in general.  *See, e.g.*, *Flaherty v. Seroussi*, 209 F.R.D. 300, 304 (N.D.N.Y. 2002) (agreeing that a limited protective order was warranted to protect "medical, educational, and other inherently private information concerning individual employees of the City," as well as "records relating to allegations and investigations which have not ripened into employment actions").  The parties are directed to submit an agreed-upon proposed order — or competing orders accompanied by letters, not to exceed five single-spaced pages, setting forth the rationale behind each party's proposed order — no later than **August 6, 2015**.

11

## REQUESTS TO SEAL

The Court now turns to Lead Counsel's request to temporarily redact its memorandum of law and to file several exhibits under seal based on the confidentiality provisions in Order No. 10.  (14-MD-2543 Docket No. 1084).  All of the exhibits submitted under seal were presented by way of factual background (*see* Pls.' Mem. 6-7) — many seemingly intended to condemn the conduct of New GM rather than to illuminate the legal and factual bases behind Lead Counsel's opposition to New GM's motion — and were not considered by the Court in making its ruling on New GM's motion.   Accordingly, these exhibits are not "judicial documents" subject to the presumption in favor of public access.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (noting that the "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access"; instead, "[i]n order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process" (internal quotation marks omitted)).  As for Plaintiffs' memorandum, the parties shall meet and confer as to the propriety of the redactions, and if any party believes that any portion should remain under seal or redacted, it shall submit a letter brief, not to exceed five pages, no later than **August 6, 2015** indicating why that is consistent with the presumption in favor of public access.  Any opposition shall be filed no later than **August 13, 2015.**

## CONCLUSION

The Second Circuit has cautioned that Rule 26 is "not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes."  *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940,

944-45 (2d Cir. 1983) (emphasis omitted). Here, for the reasons stated above, the Court concludes that the order proposed by New GM would go well beyond protecting those interests and that more narrowly tailored orders — limited to protecting the interests of third parties and adopting Rule 3.6 of the New York State Rules of Professional Conduct — would more appropriately balance the interests at stake, including the interests of third parties in avoiding injury, harassment, and invasions of privacy; the interests of the press and the public in the subject matter of this MDL; and the interests of the parties in fair proceedings and trials. Accordingly, New GM's motion is granted in part and denied in part.

The Clerk of Court is directed to terminate 14-MD-2543 Docket No. 1058.

SO ORDERED.

Dated: July 24, 2015
New York, New York

_____
JESSE M. FURMAN
United States District Judge

13